**So Ordered.**



Patricia C. Williams
Bankruptcy Judge

**Dated: June 17th, 2013**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | DC No. 11-CV-0449-LRS |
| AMERICANWEST BANCORPORATION,  | No. 10-06097-PCW11 |
| Debtor(s). | |
| CAPPELLO CAPITAL CORP., | |
| Plaintiff(s), | Adversary No. 11-80323-PCW |
| vs. | REPORT AND RECOMMENDATION RE: AMERICANWEST BANK'S MOTION FOR AWARD OF ATTORNEY'S FEES (ECF NO. 256) |
| AMERICANWEST BANK, et al., | |
| Defendant(s). | |

The Honorable Patricia C. Williams, sitting in the United States Bankruptcy Court for the Eastern District of Washington, hereby files this Report and Recommendation concerning defendant AmericanWest Bank's Motion for Award of Attorney's Fees (ECF No. 256).

1    This Report and Recommendation is made pursuant to the Honorable

2    Lonny R. Suko's Order Referring AmericanWest Bank's Motion for Award of

3    Attorney's Fees for Report and Recommendation entered on March 29, 2013 (DC

4    Case No. 11-CV-0449-LRS, ECF No. 58).

5    It is recommended that AmericanWest Bank's Motion for Award of

6    Attorney's Fees be granted in part and denied in part. The basis for the

7    recommendation is set forth in the attached Memorandum Decision filed herewith.

8                    ///REPORT AND RECOMMENDATION///

9

10

11

12

13

14

15

16

17

18

19

20

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | DC No. 11-CV-0449-LRS |
| AMERICANWEST BANCORPORATION, | No. 10-06097-PCW11 |
| Debtor(s). | |
| CAPPELLO CAPITAL CORP., | |
| Plaintiff(s), | Adversary No. 11-80323-PCW |
| vs. | MEMORANDUM DECISION RE: AMERICANWEST BANK'S MOTION FOR AWARD OF ATTORNEY'S FEES (ECF NO. 256) |
| AMERICANWEST BANK, et al., | |
| Defendant(s). | |

AmericanWest Bank (hereinafter "AWB") seeks reimbursement of attorney's fees and expenses through 2012 of $4,204,470.29. The components of that request are fees and expenses paid to the law firm of Davis Wright Tremaine, counsel for AWB, in the amount of $2,257,345.36, and fees and expenses paid to the law firm for co-defendant Sandler O'Neill and Partners, LP (hereinafter "Sandler") in the

MEMORANDUM DECISION RE: . . . ~ Page 1

amount of $1,183,816.45. The latter were paid pursuant to AWB's duty to defend and indemnify Sandler from claims such as those brought by Cappello Capital Corporation (hereinafter "Cappello"). AWB also paid $364,203.90 to Orange Legal, the professional document search and retention firm, which assisted in the document production related to the lawsuit. Also included is interest from the date each attorney's fee invoice was paid through February 21, 2013, at the rate of ten percent (10%) per annum, which totals $399,104.58. AWB also seeks to increase the amount of the reimbursement requested from Cappello to the extent additional fees and expenses were and are incurred after these dates. That request, if applicable, will be made after a decision has been rendered regarding the current request.

## ISSUE

Is AWB entitled to an award of all attorney's fees and expenses incurred in this litigation? If so, what should be the amount of the award?

## APPLICABLE LAW

### A.    THE CALIFORNIA STATUTE.

The contract between the parties requires the application of California law. The issue is to be determined pursuant to California law, specifically Cal. Civ. Code § 1717, which governs an award of fees and costs in actions based on contract claims.

MEMORANDUM DECISION RE: . . . ~ Page 2

This claim for attorney's fees arises under the contract between AWB and Cappello, which provided that in the event of any legal dispute, all reasonable attorney's fees and related expenses of the prevailing party shall be paid by the other party. The complaint alleges that AWB breached that contract and breached its duty of good faith and fair dealing under the contract. The basic premise that a prevailing party in a contract dispute should be paid its attorney's fees is adopted in the California statute with the reasonableness of the fees to be determined by the court.

## 1.    **Prevailing Party**.

On February 2, 2011, Cappello filed this action in the Superior Court of the State of California for the County of Los Angeles. AWB removed the case to the United States District Court for the Central District of California on March 3, 2011. Cappello filed a motion to remand to the state court, which was denied. AWB asked Central District of California court to transfer the case to the United States District Court for the Eastern District of Washington, with its ultimate destination to be this bankruptcy court, where the bankruptcy was pending. Cappello vigorously objected to the transfer, but AWB prevailed, and the case was transferred to the Eastern District of Washington by order entered July 28, 2011. After transfer to the District Court for Eastern District of Washington, that court on August 22, 2011, transferred and remanded the case to this court. Cappello's request for equitable remand to the

California state court was heard by this court. AWB prevailed in its objection to the remand and remand was denied on December 2, 2011 (ECF No. 94).

During the course of the adversary proceeding, various discovery controversies were addressed by this court. Resolution of each of those disputes heavily, but not exclusively, favored AWB. AWB filed its motion for summary judgment on January 9, 2012 (ECF No 119). That motion was vigorously contested. On October 16, 2012, this court concluded that as a matter of law Cappello was not entitled to any relief and the adversary should be dismissed. As a withdrawal of reference had occurred, a recommendation to that effect was made to the District Court (ECF No. 233). Cappello vigorously contested and argued that the bankruptcy court's recommendation should not be adopted. AWB prevailed and the District Court on January 25, 2013 adopted the recommendation (DC Case No. 11-CV-00449-LRS, ECF No. 10).

### a.    **Counterclaims**.

Despite this background, Cappello alleges that AWB was not the prevailing party in the litigation. The basis for this argument is that AWB had alleged counterclaims in its answer to the complaint, and AWB has recently voluntarily dismissed its counterclaims. The counterclaims alleged in the answer of AWB were: 1) promissory estoppel; 2) Cappello would be unjustly enriched by any recovery; and 3) relief was barred due to the bankruptcy proceeding, which had occurred in

this court. Clearly, those were defensive claims. To use a military analogy, those claims could be properly characterized as shields against the attacking plaintiff's affirmative claims. AWB also alleged as counterclaims that Cappello had breached the contract and the duty of good faith and fair dealing and fraudulently induced AWB to enter into the contract. Such claims could lead to some affirmative relief and could be characterized as "swords" against the attacking plaintiff. AWB also alleged a violation of the automatic bankruptcy stay, which can be both a defense, i.e., a "shield," as it renders actions taken in violation of the stay null and void and can be a basis for affirmative relief, i.e., a "sword." Once it had been finally concluded that Cappello was not entitled to any relief against AWB and that the complaint should be dismissed, AWB voluntarily dismissed its counterclaims. Thus argues Cappello, it prevailed to the same extent that AWB prevailed in the suit. Such argument is not supported by the statute and ignores the reality and purpose of the litigation.

The statute provides that a court shall determine which party, or perhaps neither party, has prevailed on the contract claims. The prevailing party is the party which obtains the greater relief. If the result of the litigation is "mixed," with the relief granted each party evenly divided, the court may determine that neither party prevailed. Hsu v. Abbara, 891 P.2d 804 (Cal. 1995).

In this situation, the relief was not evenly divided. AWB obtained a clear unequivocal win and dismissal of the case on summary judgment. It obtained its main litigation objection and defeated Cappello's only claim against it. The result of the litigation was a "simple, unqualified win" for AWB. Hsu v. Abbara, supra. The fact that after obtaining a clear victory on summary judgment AWB decided not to proceed with its counterclaims does not change its status as a prevailing party. Under some circumstances, if a defendant voluntarily dismissed its counterclaims, that dismissal would demonstrate that the defendant was not a prevailing party. No such circumstances exist in this case. Cappello's argument would result in a defendant who has obtained dismissal of the plaintiff's entire suit as a matter of law to either proceed to litigate the defendant's counterclaims or lose its status as a prevailing party. There is no case law cited in support of such a result.

### b. **The Second Adversary**.

On March 14, 2011, while the controversy regarding the proper venue of the case was pending, AWB, together with Sandler and the successful purchaser in the bankruptcy sale sued Cappello in this court under adversary case No. 11-80039-PCW. That complaint essentially restated the counterclaims described above as causes of action against Cappello. The reference was withdrawn and the second adversary consolidated with this case.

By memorandum decision (ECF No. 94) entered in this adversary denying Cappello's motion for equitable remand, this court viewed the second adversary as a tactical maneuver to provide an independent basis for jurisdiction and defeat the motion to remand to the California state court. Despite that view, the existence of the second adversary weighed against remand and was a factor in defeating Cappello's motion to remand.

A review of the record reflects that only a stipulated motion to consolidate and stipulation for a protective order were filed in the related adversary.[1] The entire bankruptcy court file consists of 53 pleadings. No answer was ever filed and the only pleading which relates to the merits of the suit is the complaint. The District Court file regarding the second adversary contains 10 pleadings, none of which relate to the merits of the suit. By contrast, there are 270 pleadings in this court regarding this adversary, and the paper copies of the pleadings relating to the summary judgment required several notebooks.

Neither this court's recommendation regarding summary judgment nor the District Court's adoption of that recommendation addressed the second adversary. The second adversary has lain dormant since its inception. On April 8, 2013, AWB voluntarily dismissed the case.

---

[1]Cappello did file a motion to dismiss (ECF No. 12), but it was never briefed or set for hearing or argued.

Cal. Civ. Code § 1717(b)(2) precludes an award of fees to AWB as a prevailing party in this second adversary. Section (b)(2) of Cal. Civ. Code § 1717 states: "Where an action has been voluntarily dismissed . . . there shall be no prevailing party. . . ." Any portion of the requested fees for legal services directly attributable to the second adversary cannot be awarded. No calculation has been made regarding the amount of such requested fees. Due to the fact that all legal services were recorded on a block billing basis, it is impossible to determine the amount of legal services and fees attributable to that adversary. Based upon the dormant nature of the second adversary and the review of the attorney billing invoices described below, the estimate is $20,000. The request for reimbursement must be reduced by that amount.

## 2. **Reasonable Fees**.

The California statute and the contract between the parties both allow "reasonable" attorney's fees. The question of reasonableness has various components, including the reasonableness of the hourly rate, amount of hours, and quality of service. Expenses associated with the legal services must also be reasonable.

### a. **Hourly Rates**.

AWB had agreed to compensate its counsel on a hourly rate basis. The hourly rates paid by AWB to the law firm were established at $517.75 for Mr. Craig Miller,

the partner leading the defense, who has approximately 35 years of experience.[2] The hourly rate for Mr. David Tarshes, another partner with approximately 30 years of experience, had an hourly rate of $460.75. The hourly rate of the associate Ms. Sarah Duran with 7 years of experience was $342. A paralegal and document clerk, both characterized as "senior," had hourly rates of $209 and $95, respectively. All of the individuals were located in Seattle, Washington. The law firm also has offices in Los Angeles, California, and another west coast city.

Mr. Jeffrey Valle, the lead partner prosecuting the claims on behalf of Cappello, has approximately 30 years of experience and his rate is $550 an hour. He is located in Los Angeles, California, and the law firm has offices in other large west coast cities. Both law firms should be characterized as large regional law firms.

It is not disputed that average hourly rates for comparable commercial litigation counsel located in Spokane, Washington, are less than for those in Seattle, Washington, or other large west coast cities. This raises the issue of "local rate" versus the rates charged by the regional law firm for AWB. Both parties have argued the effect of the unpublished decision of Eastern Washington District Court Judge Justin L. Quackenbush in Plumbers Union Local No. 12 Pension Fund v. Ambassadors Group, Inc., 2012 WL 847275 (E.D. Wash. Feb. 28, 2012) and the

---

[2]As this case took some years to conclude, the rates changed. The cited rates are the average and reflect a "client discount."

later <u>Plumbers Union Local No. 12 Pension Fund v. Ambassadors Group, Inc.</u>, 2012 WL 1906384 (E.D. Wash. May 25, 2012). Those decisions, however, were class action suits involving an award of statutory attorney's fees, with the court sitting in a fiduciary capacity on behalf of the class members. Judge Quackenbush determined that, although typically local rates are used in statutory awards of attorney's fees, because of the nature of that case, rates higher than the local rate should prevail. Approved hourly rates were $500 for partners, $300 for associates, and $150 for paralegals.

Counsel for AWB in the underlying chapter 11 proceeding were also headquartered in Seattle, Washington, and could be considered a large regional law firm. It is not uncommon for large chapter 11 cases and related adversary proceedings to involve Seattle, Washington, counsel, either on behalf of the debtor or a major creditor. In this bankruptcy proceeding, the counsel appearing for the debtor had experience roughly equivalent to counsel in this case. Rates were approved at $480 for a lead partner, $475 for another partner, and $190 for a paralegal (AWB Main Case No. 10-06097-PCW11, ECF No. 398).

The applicant has the burden of persuasion as to both the entitlement to an award of fees and the amount, assuming an award should be entered. Determination of the appropriate amount is in the discretion of the trial court. <u>Welch v. Metropolitan Life Ins. Co.</u>, 480 F.3d 942 (9th Cir. 2007); <u>Ackerman v. Western</u>

<u>Elec. Co., Inc.</u>, 643 F. Supp. 836 (N.D. Cal. 1986). No decision has been cited which addresses the Cal. Civ. Code § 1717 use of the term "reasonable." The analysis of reasonableness must be made without any guidance by a California court.

The present controversy does not involve a statutory award of attorney's fees, but rather is a private contract dispute between two very financially sophisticated parties, each of which selected counsel and agreed to pay certain hourly rates for the legal services. Those hourly rates are comparable. Although the court exercises its discretion, under such circumstances, some weight should be given to the parties' decision to employ counsel at a particular hourly rate.

The hourly rate requested is reasonable. Any justification to require local rates be applied does not appear relevant to this controversy.[3] This case was commenced in a state court in Los Angeles, California. AWB promptly removed the case to the federal District Court sitting in Los Angeles, California, and at that time, apparently had the goal of litigating the dispute in this court. Certainly at that point in the litigation, it was uncertain whether venue would be in a state court or a federal district court or a bankruptcy court. It was uncertain whether the litigation would proceed in Los Angeles, California, or Spokane, Washington. The determination of

---

[3]In response to the court's request, plaintiff submitted the Declaration of Dan O'Rourke as evidence of local rates (ECF No. 283). That declaration was helpful, but ultimately the evidence was not relied upon due to the conclusion that local rates do not apply.

proper venue was a lengthy and hard fought battle. Even assuming local rates would ordinarily apply to this case, it would be unfair, inefficient, and unwise to limit either party to local rates under such circumstances.

### b. **Unnecessary Services**.

The hourly rates are reasonable particularly for the quality of the services provided, but there is another component to the determination of reasonableness. Were the legal services necessary or duplicative? Cappello quite correctly objects to reimbursing AWB's law firm for efforts it undertook relating to its defense regarding the lack of Cappello's California business license. At the time of the summary judgment motion by AWB, that defense was discovered to be untenable and was abandoned. The evidence is that AWB's law firm reduced its billing to AWB by $10,000 for work related to that defense. That reduction is reflected in the amount sought to be reimbursed by Cappello and is no longer an issue.

AWB had alleged a violation of the automatic stay as a counterclaim. As the debtor in the chapter 11 was not a party to this litigation, that counterclaim appears spurious on its face. It was never pursued. Any fees associated with that counterclaim would be minimal. The cost to determine an accurate estimate of the actual sum would undoubtedly be more than the sum itself. For that reason, the amount of requested fees will simply be reduced by $2,000.

In a case this hard fought, it is to be expected that attorney's fees will be substantial. Although a private party contractual dispute, voluminous discovery was necessary. Undoubtedly, the discovery process resulted in a great deal of time and expense, but the discovery process is part of the litigation process. There are numerous individuals within the law firm who provided some form of legal services but eighty percent (80%) of the services were provided by the individuals listed above. There was at least one specialized issue pertaining to bank privilege, which required some specialized knowledge. The changing venue from court-to-court rendered it advisable for some consultation with other members of the firm regarding their experience with a particular court. Other than the specific situations addressed hereafter, the fact that 25 individuals provided some service raises concerns regarding duplication of services, but does not under these circumstances automatically result in a conclusion duplication occurred.

**B.** **CAP REGARDING FEES.**

The attorney's fee provision in the contract between AWB and Cappello appears on page 8 and is a paragraph headed "Attorney's Fee Provision," which reads as follows:

> In the event of any legal dispute between the Company and the Advisor, all reasonable attorney's fees and related expenses of the prevailing party shall be paid by the other party (which shall include an award of interest at 10% per annum and recovery of costs by the prevailing party).

AWB's request for attorney's fees and expenses is based upon this contractual provision. Cappello maintains, however, that other provisions of the contract impose a "cap" or limit on any fees to which AWB would be entitled under this paragraph.

At page 9 of the contract is a paragraph headed "Indemnification." It begins as follows:

> Recognizing that Advisor, in providing the services contemplated hereby, will be acting as representative of and relying on information provided by the Company, the Company agrees to the provisions of Attachment A hereto. . . .

The attachment to which it refers to is two pages and is headed "Indemnification - Attachment A." The language in that attachment begins with the standard phrases stating AWB ". . . shall indemnify, defend and hold harmless . . ." and defines the indemnified parties which are essentially Cappello and its officers, directors, etc. The attachment addresses the restriction upon AWB to settle or compromise claims it is indemnifying, establishes notice requirements for the indemnified parties to advise of claims for which indemnification is sought, and many other provisions, all of which relate to AWB's duty to indemnify as established at page 9 of the contract.

The first paragraph of the "Indemnification - Attachment A," reads in part:

> Notwithstanding any other provisions hereunder, in no event shall the Indemnified Persons be liable to the Company [AWB] for an amount greater, in the aggregate, than the fees actually received by the Advisor [Cappello] hereunder.

Cappello argues that this sentence appearing in the attachment limits the attorney's fees provision of the contract on page 8. The most cursory reading of the attachment and indeed the heading itself leads to the conclusion that Attachment A relates to the duty to indemnify established on page 9 of the contract and only that provision. There is no ambiguity in the contract. If a dispute arises under the contract, the prevailing party is entitled to its attorney's fees.

Assuming that Cappello is correct that ambiguity does exist, the contract was drafted by Cappello. Under general principles of contract law, any ambiguity is interpreted in favor of the non-drafting party. Restatement (Second) of Contracts § 206 (1981).

## C.  <u>LEGAL FEES FOR SANDLER</u>.

As cited above, the attorney's fee provision in the contract at page 8 reads:

In the event of any legal dispute between the Company and the Advisor, all reasonable attorney's fees and related expenses of the prevailing party shall be paid by the other party (which shall include an award of interest at 10% per annum and recovery of costs by the prevailing party).

By its very language, the provision limits the contractual right of recovery to a dispute between AWB and Cappello. There is no reliance upon any contract between Cappello and Sandler. The claims of Cappello against Sandler were based upon tort law, and no statute has been cited which would allow recovery of any fees or

MEMORANDUM DECISION RE: . . . ~ Page 15

expenses to a party which prevailed in a tort action. Absent a statutory or contractual provision, litigants are liable for their own fees. <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed. 2d 141 (1975).

Cappello knew of AWB's duty to indemnify Sandler. Indemnity clauses are expected in commercial contracts between financially sophisticated parties, as is evidenced by the indemnity provisions of the contract between AWB and Cappello. The contract between Sandler and AWB was submitted with Sandler's application to be employed in the underlying chapter 11 case. Cappello received notice of that application and the approval of employment. This litigation was commenced in February of 2011, and in April of that year, Sandler filed an administrative expense claim in the underlying chapter 11 case based upon its contractual right of indemnity. The effect of that administrative expense claim upon this adversary was promptly noted and argued in relationship to various issues in this case.

It must be emphasized, however, that AWB's claim for reimbursement from Cappello arises from, and is based upon, the specific provision in the contract between those parties. That contractual provision does not provide that either Cappello or AWB would be entitled to reimbursement for fees and related expenses incurred by a third party, but paid by Cappello or AWB. By its very terms, it is limited to fees incurred by either Cappello or AWB in a legal dispute between those two parties. As correctly noted by Cappello, should it have brought a separate suit

against Sandler, even though AWB would have been obligated to defend and indemnify Sandler in that separate suit, AWB would have no claim for reimbursement against Cappello arising from that separate suit. Although an attorney's fee provision in a contract could undoubtedly provide for reimbursement of fees and expenses of a third party, the contractual provision applicable to this dispute does not.

AWB is not entitled to recover the fees incurred for legal services provided to co-defendant Sandler, which were in the amount of $1,183,816.45.

### D.  INTEREST ON ATTORNEY'S FEES AND COSTS.

The attorney's fee provision in the contract includes in any fees ". . . an award of interest at 10% per annum . . . ." AWB seeks that amount of interest from the date each attorney's fee invoice was paid until February 21, 2013, or until the later date such fees are reimbursed by Cappello. Cappello objects on the basis that interest does not accrue until Cappello is ordered to pay attorney's fees and costs.

The term "award" is defined in Black's Law Dictionary 157 (9th ed. 2009) as "[a] final judgment or decision, esp. one by an arbitrator or by a jury assessing damages." The use of the term "award" in the contract mandates the conclusion that interest at ten percent (10%) begins to accrue once a determination has been made that one of the contracting parties is entitled to recover its fees and costs from the other party.

The rule of contract interpretation is that terms used in a contract are to be given their ordinary meaning. Restatement (Second) of Contracts § 223 (1981). Cappello's duty to pay AWB's attorney's fees in this dispute rests upon a finding that AWB is the prevailing party in the dispute. The duty to pay also rests upon a finding as to the reasonable amount of the fees. Until those findings are made, no duty arises. The liability is unliquidated. In other words, the fees and costs must be "awarded." Once that award occurs, the interest begins to accrue. As no award had occurred, AWB is not entitled to interest in the amount of $399,104.58.

### E.    BLOCK BILLING.

Cappello objects to any award of fees under the contract as all legal services provided by the Davis Wright Tremaine law firm to AWB were provided on a "block billing" basis. "Block billing" is the timekeeping method by which legal professionals enter the total time attributable to a client or lawsuit for a particular day and describe all tasks performed, but do not specify the time attributable to each task. In awarding fees as required by a statute utilizing the Lodestar method, courts have been critical of block billing. That timekeeping method renders it difficult, if not impossible, to apply Lodestar factors, particularly the Lodestar requirement concerning the reasonableness of fees for a particular task such as a summary judgment motion.

An award of attorney's fees under ERISA was the subject of <u>Welch</u>, <u>supra</u>. In that decision, the court relied upon a report by the California State Bar Committee on Mandatory Fee Arbitration, which concluded that block billing may increase the professional service hours by 10 to 30 percent. No information was provided nor did discussion occur regarding the reliability of that state court's conclusion, which presumably opined in the context of a fee dispute between a client and its attorney in which no written fee agreement provided for block billing.

The burden to demonstrate the reasonableness of a fee request made under a statutory right to fees is upon the party seeking the fees. Block billing renders the court's determination of the amount of the award by the application of the Lodestar factors a difficult task. An important distinction exists in this case, however. This is a financially sophisticated party which agreed to the block billing seeking reimbursement of legal fees pursuant to an attorney's fee provision in a contract with another financially sophisticated party. Even though a contracting party may not expect its legal fees to be reviewed by a court, the difficulties arising from block billing in statutory awards of fees also arise in this case as AWB has the burden of demonstrating that the fees it seeks to have reimbursed under the contract are reasonable.

The Welch court adopted the trial court's reduction of the block billing fees by 20 percent (20%) based upon the conclusions of the California State Bar Committee.

> It was reasonable for the district court to conclude that Welch failed to carry her burden, because block billing makes it more difficult to determine how much time was spent on particular activities.

Welch, 480 F.3d at 948. That approach was followed in Ambriz v. Arrow Financial Services, LLC, an unpublished decision at 2008 WL 2095617 (C.D. Cal. May 15, 2008), which also reduced a statutory award of fees due to block billing. An award of fees as a sanction in a copyright infringement action was the subject in Lahiri v. Universal Music and Video Distribution Corp., 606 F.3d 1216 (9th Cir. 2010). The court awarded the fees as a sanction relating to one aspect of the lengthy litigation. Due to the fact that block billing had occurred for all the legal services in the litigation, the trial court was not able to assess the amount of the sanction to be awarded with accuracy. It exercised its discretion in determining the award by reducing the total hours in the block billing entries by 30 percent (30%). The court of appeals concurred with that approach.

Block billing also prevented the court in Frevach Land Co. v. Multnomah County, Dept. of Environmental Services, Land Use Planning Div., an unpublished decision at 2001 WL 34039133 (D. Or. December 18, 2011), from assessing with accuracy the amount of professional fees relating to a task the court determined was

unnecessary. The trial court did not eliminate all fees in the block billing entries but, based upon its familiarity with the case and review of the actual billing invoices, estimated the amount of fees relating to the task.

The same difficulty exists in this case to the extent that certain services are not subject to inclusion in the attorney's fee provision of the contract between AWB and Cappello. The block billing method prevents an accurate calculation of the fees to be excluded. It does not, however, prevent the court from estimating those fees nor does it prevent the court from determining whether the total fees requested are reasonable.

Billing invoices dated as follows were reviewed entry-by-entry: (1) April 30, 2011; (2) October 14, 2011; (3) December 15, 2011; (4) January 31, 2012; and (5) November 26, 2012. The invoice dated June 27, 2011, was reviewed less thoroughly. These invoices reflected the period in which a great deal of discovery occurred. The billing invoices revealed that the requests to produce documents made by Cappello required the law firm for AWB to assign additional personnel to the task of responding to the discovery requests. Associates, in addition to Ms. Duran, provided significant services. Additional paralegal and document clerks became involved. A great deal of overtime and weekend work ensued.

According to counsel, the plaintiff's seven requests to produce documents from the defendants and third parties, which requests contained 185 categories of

documents, resulted in the production of 12,936 documents. Those documents consisted of approximately 97,826 pages.

The fact that block billing occurred does not prevent a conclusion that the fees requested are reasonable and no across-the-board percentage reduction should occur. Reductions in the amount requested for specific services are noted herein and arise not from the fact of block billing, but from a lack of entitlement to the fees.

## F. OBJECTIONS TO SPECIFIC CATEGORIES OF FEES.

### 1. Representation of Starbuck Bancshares and SKBHC Holdings.

Cappello engaged in extensive third party discovery from SKBHC Holdings (hereinafter "SKBHC"), the stalking-horse bidder in the chapter 11, and from Starbuck Bancshares (hereinafter "Starbuck"), its successor-in-interest and ultimate purchaser of the bank. According to counsel, the third party document requests resulted in SKBHC and Starbuck producing 4,163 documents of 46,109 pages.

AWB provided all legal services to those entities related to the third party discovery requests. Those legal services also included the services of Orange Legal Technologies (hereinafter "Orange Legal") to gather and retain the documents. The fees and expenses incurred for the representation of those third parties are not subject to reimbursement by Cappello under the attorney's fee provision of the contract. As discussed above, AWB is entitled to reimbursement of fees and expenses for its fees, but not for fees of others. The amount requested for legal

services provided by Davis Wright Tremaine of $2,257,345.36 must be reduced to the extent those legal services were for the benefit of third parties and not AWB. The same is true of the expenses incurred for the services of Orange Legal in the amount of $364,203.90.

Due to block billing, that reduction cannot be reduced to a mathematical certainty, but a reasonable estimate may be made. The fees and expenses are associated primarily, but not exclusively, with document production and depositions. The starting point for the calculation of an appropriate reduction is the percentage of documents produced by the third parties when compared to all documents produced.

| Party | No. of Documents Produced | Percentage of Documents Produced |
|-------|---------------------------|----------------------------------|
| AWB | 5,386 | 41.6% |
| Starbuck/SKBHC | 4,163 | 32.2% |
| Sandler | 3,387 | 26.2% |
| **TOTAL DOCUMENTS**: | 12,936 | |

However, it is not appropriate to calculate a reduction in fees solely on the basis of the number of documents produced by the non-parties. Should separate counsel have represented those entities, counsel for AWB would have been required to be intimately involved in the document production. Familiarity with the chapter 11 process and this litigation renders it apparent that many of the documents subject to the various requests would have contained information regarding AWB,

regardless of which entity had custody of the document. Counsel for AWB would have had to carefully review the document requests and the documents produced and coordinated with any counsel representing Starbuck or SKBHC. It would have been inefficient for a separate document retention and storage entity other than Orange Legal to have been employed.

Counsel for AWB would have been required to prepare for and participate in the depositions concerning those entities. The reduction of fees attributable to the representation of SKBHC or Starbuck should be 32.2 percent (32.2%) based solely upon the number of documents produced. Such percentage reduction would not reflect the efforts which would have been required even if Starbuck or SKBHC had retained separate counsel. Rather than reducing legal fees by 32.2 percent, they should be reduced by 15 percent (15%). Thus, the reduction in fees for the representation of Starbuck and SKBHC is $338,601.80

| | |
|---|---|
| Total Attorney's Fees Requested: | $2,257,345.36 |
| | x            .15 |
| **TOTAL REDUCTION IN FEES:** | **$   338,601.80** |

The cost for Orange Legal services should be reduced by the same 15 percent (15%). The Orange Legal expense also includes services for Starbuck and SKBHC. For these same reasons, the reduction of these costs based solely upon the documents produced by Starbuck and SKBHC should be 32.2 percent (32.2%). Such percent

reduction would not reflect the efforts which would have been required even if Starbuck and SKBHC had retained separate counsel. Rather than reducing the Orange Legal costs by 32.2 percent (32.2%) for Starbuck and SKBHC, they should be reduced by 15 percent (15%). The total reduction of the expenses incurred for the services of Orange Legal should be $54,630.59.

| | |
|---|---|
| Total Orange Legal Expenses: | $364,203.90 |
| | x        .15 |
| **TOTAL REDUCTION:** | **$ 54,630.59** |

### 2. **Training**.

Cappello objected to the request for reimbursement of fees incurred for training of Davis Wright Tremaine personnel and the court requested plaintiff supplement that objection, which it did. The review of the billing invoices reflect that the "training" was almost exclusively associated with the document requests. As noted above, additional associates and law firm staff had to be assigned to the case in order to meet the document production needs. Those individuals had to be trained to use the software program, which searched and classified documents, and had to become familiar with the search terms and the legal issues in the case. Work of paralegals and document clerks had to be quality checked by associates and numerous entries on the billing memos relate to analysis of privilege and production

of privilege logs relating to the documents. Without the training, that could not have occurred. These activities do not result in a reduction of fees.

### 3. **Recovery of Computer-Assisted Research Costs**.

Cappello objects to any award of attorney's fees as costs paid to a computerized legal research provider, i.e., Westlaw. Historically, the costs of maintaining a law library were considered overhead because those costs were fixed. With the advent of online legal research, it became possible to identify and quantify the expense of legal research tools to particular clients. Hence, some courts have held that the charges of a provider of the tools for computerized research may be recovered as a part of an award of attorney's fees, while other courts have held that such expenses may be recoverable as costs. Some courts have held that the cost of computer-assisted legal research is overhead and cannot be recovered either as fees or costs. For either an award of attorney's fees or costs, charges for computerized legal research must be necessary and reasonable for the request to be approved. 1 Attorneys' Fees § 6:17 (3d ed.).

There are few cases applying California law which address the issue of whether or not charges paid to a provider of computerized legal research such as Westlaw are recoverable as a measure of costs or fees. In Hughes v. U.S. Foodservice, Inc., 168 Fed. Appx. 807 (9th Cir. 2006), the Court of Appeals held that an employee prevailing in a claim for violation of the Fair Employment and

11-80323-FPC    Doc 286    Filed 06/17/13    Entered 06/18/13 10:27:58    Pg 28 of 32

Housing Act was entitled to computer research expenses as part of attorney's fees pursuant to Cal. Gov. Code § 12965(b), even though Cal. Civ. Proc. Code § 1033.5 bars recovery of computer research expenses as costs. The reasoning behind the court's decision was that denying those expenses would run contrary to the intent of the federal Act's attorney fee provision. <u>Hughes</u> is distinguishable from the instant case as it applied federal statutory law.

<u>Ladas v. California State Auto. Assn.</u>, 19 Cal. App. 4th 761 (1st Dist. 1993), was a breach of contract case. Recovery for the expense of computerized research was requested by the prevailing party in that case pursuant to Cal. Civ. Proc. § 1033.5. That statute, as does Cal. Civ. Code § 1717, allows attorney's fees to be recovered when a contract so provides. That statute enumerates certain expenses, such as filing fees and deposition transcriptions, which may be recovered as costs. In <u>Ladas</u>, the trial court held that computerized research expenses were not statutorily permissible.

> The court allowed CSAA's claim of $5,697.40 for "Computer Legal Research." This was error. Section 1033.5, subdivision (b)(2) precludes recovery of investigation expenses and attorney fees are not compensable as costs in the absence of an agreement of the parties or statutory authority. (Code Civ. Proc., § 1021.) Fees for legal research, computer or otherwise, may not be recovered under section 1033.5.

<u>Ladas</u>, <u>supra</u>, at p. 776.

Application of California law precludes recovery of the Westlaw charges for computerized legal research. As were subscriptions to legal reporters and periodicals considered overhead, the Westlaw charges must also be considered overhead. Changing the nature of the research device from paper to electronic impulses does not change the expectation that lawyers will avail themselves of the necessary tools to practice their profession. Out-of-pocket Westlaw charges constitute overhead and may not be awarded as either fees or costs.

The defendant has now identified the entries on the applicable invoices which reflect this charge. Counsel represents that the total of those charges is $103,169. The amount will be deducted from the requested fees of $2,257,345.36.

### 4. **Erroneous Entries or Mistakes**.

The invoices evidencing the defendants' request for reimbursement of attorney's fees contain certain entries which do not facially appear to be related to this controversy. For example, an entry on 5/18/11 " . . . finalized Chemtura Subpoena . . . ." Some entries apparently reflect correction of prior mistakes, for example an entry on 3/20/12 ". . . create clerical error sheet for document inadvertently produced to opposing counsel . . . ." Additional information was requested from both parties regarding this issue and both parties provided such information. The information provided was of great assistance, as was the line-by-line review of some of the billing invoices. The conclusion is that the great majority

of questionable entries do, in fact, reflect attorney services relating to this case and actions to prevent errors from occurring. The charges for legal services to correct prior mistakes were few in number and did not involve any signification effort. The maximum estimated amount of fees associated with the correction of prior errors, and assuming that a review of each and every entry in each billing invoice would reveal some such additional entries, results in a conclusion that the fees should be reduced by $1,000.

## **CONCLUSION**

Defendant AWB is entitled to obtain reimbursement of its attorney's fees and costs from plaintiff. The terms of the award of attorney's fees and costs are set forth in this report and recommendation. The defendant is the prevailing party, the contract does not limit or cap the award of fees, and the fees are reasonable with the exceptions noted below.

The portion of the fees incurred by Sandler and paid by AWB ($1,183,816.45) does not qualify for reimbursement. Nor do any legal fees qualify which represent representation of Starbuck and SKBHC, which is estimated to be $338,601.80. The request for costs of $364,203.90 paid to Orange Legal is recoverable from plaintiff, but must be reduced to reflect that some of the Orange Legal services were provided on behalf of SKBHC or Starbuck for a reduction of $54,630.59.

The contract between plaintiff and defendant did not provide for accrual of interest until a determination was made that fees could be recovered and the amount of the recovery was determined. Once those determinations are made, the fees are awarded and interest begins to accrue at ten percent (10%).

The following calculations evidence the conclusions set forth in this report and recommendation:

| | |
|---|---|
| Attorney's Fee Request | $4,204,470.29 |
| Disallowed Sandler Fees | $1,183,816.45 |
| Disallowed Starbuck/SKBHC Fees | $ 338,601.80 |
| Disallowed Orange Legal Costs | $ 54,630.59 |
| Disallowed Interest through 2/21/13 | $ 399,104.58 |
| Disallowed Westlaw Charges | $ 103,169.00 |
| Disallowed Second Adversary Fees | $ 20,000.00 |
| Disallowed Re: Automatic Stay | $ 2,000.00 |
| Disallowed Re: Erroneous Entries/Mistakes | $ 1,000.00 |
| **TOTAL FEES & EXPENSES AWARDED:** | **$2,102,147.87** |

/// END OF MEMORANDUM DECISION ///